[Cite as *Shaw v. Access Ohio*, 2018-Ohio-2969.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| MICHELLE SHAW, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | Appellate Case No. 27638 |
| | : | |
| v. | : | Trial Court Case No. 2016-CV-4199 |
| | : | |
| ACCESS OHIO | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of July, 2018.

. . . . . . . . . . .

DAVID M. DUWEL, Atty. Reg. No. 0029583, 130 West Second Street, Suite 2101, Dayton, Ohio 45402
        Attorney for Plaintiffs-Appellants

PRISCILLA HAPNER Atty. Reg. No. 0066275, P.O. Box 91106, Columbus, Ohio 43209
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Plaintiff-appellant Elaine Barrow and her mother, plaintiff-appellant Michelle Shaw, filed a joint complaint raising state law claims of race discrimination. Shaw appeals the Civ.R. 12(B)(6) dismissal of her claims. Barrow appeals the summary judgment rendered against her. For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 2} Access Ohio d/b/a Access Residential (hereinafter "Access") is an Ohio company headquartered in Columbus. It operates community mental health centers for mental health and substance abuse treatment for individuals who qualify for Medicaid. Access operates a residential alcohol and drug rehabilitation program located on Wayne Avenue in Dayton. The facility is licensed by the Ohio Department of Mental Health and Addiction Services (hereinafter "the State").

{¶ 3} In September 2015, Regional Program Director Chauncey Wallace recruited and hired Shaw to work at Access as a human resources manager. As part of her duties at Access, Shaw was responsible for processing personnel forms and files, a function that included checking references and obtaining criminal background checks for all new employees. Shaw's daughter, Barrow, was hired approximately two weeks later as a Chemical Dependency Counselor Advisor.[1]

{¶ 4} On Wednesday, December 30, 2015, Access was audited by the State. As part of the audit, the State inspectors asked to meet with randomly-selected clients who

---

[1] Prior to working for Access, Wallace, Shaw and Barrow had been coworkers at another rehabilitation facility in Dayton.

were currently residing at the facility. At the conclusion of the audit, Access was directed to investigate resident claims that Shaw had been helping clients sign up for food stamps and that Barrow had been improperly purchasing the food stamps from the clients for a reduced price.[2] Access was also directed to investigate Shaw's notation in an employee's personnel file indicating that Shaw had verified the employee's prior employment. According to the record, the State had closed the facility identified as the employee's reference prior to the date Shaw indicated she had verified the employee's prior employment. The investigators further informed Access that some of the clients interviewed during the audit claimed Shaw was not addressing their grievances, that she had been observed throwing their written grievance forms into the trash, and that she would later retaliate against any client that filed a grievance. Access was directed to submit a written report and correction plan for all the issues raised during the audit by the following Monday.[3]

{¶ 5} As part of their investigation, Operations Manager Missy Honeycutt and Operations Team Member Patty Parsley met with each client residing in the facility. Numerous residents claimed to have heard about the food stamp allegation involving Barrow and a client named Roy who was no longer residing at the facility. Only one resident, known as Herbert, stated that he had witnessed Barrow hand cash to a resident; he assumed it was related to food stamps.

{¶ 6} Also, during their investigation, Honeycutt and Parsley were unable to locate

---

[2] The record indicates that the clients were not eligible for food stamps while residing at the Access facility. Further, the record shows that Access employees were instructed that financial transactions with clients were not allowed.

[3] Some issues raised by the State were not related to either Barrow or Shaw.

any documentation related to client grievances that had been given by residents to Shaw. They concluded the lack of documentation corroborated the clients' claims that Shaw threw their grievances in the trash. They further found discrepancies in Barrow's employment application, for which Shaw was responsible. Specifically, Barrow's application form affirmatively denied being related to any other employee of Access, despite her relationship to Shaw. Further, Barrow's form indicated that she had a valid driver's license, despite the fact that her license was suspended. Barrow's application also listed criminal convictions which disqualified her for employment at Access. Finally, the completed reference check form performed by Shaw did not match the dates of employment listed on Barrow's job application. Shaw had not informed anyone of the problems with Barrow's application.

{¶ 7} Honeycutt and Parsley met privately with Shaw. When the issue of Barrow buying food stamps was raised, Shaw informed Honeycutt and Parsley that, a few weeks prior, she had received a grievance from a client regarding the claim that Barrow was buying food stamps from clients. Shaw further stated that she had given the grievance to Wallace to investigate. Wallace was then called into the meeting. He confirmed that he had been notified of the grievance, but he denied that Shaw had asked him to investigate it. Shaw then stated that she must have given the grievance to Brenda Wolfe, who was Barrow's immediate supervisor. When questioned, Wolfe noted that she had heard the allegation from a client and had reported it to Wallace. She denied being asked to investigate the complaint. Although Shaw claimed she did not investigate the grievance because of her relationship to Barrow, she admitted that she had spoken to Barrow about the claims and that Barrow had denied the allegations. Shaw also initially

denied receiving any grievances from clients, but later indicated that she had investigated a few grievances. However, she was unable to produce any documentation regarding these grievances. Shaw admitted helping clients enroll in the food stamp program. Shaw's employment was terminated.

{¶ 8} Honeycutt and Parsley also met with Barrow to inform her of their investigation and their decision to terminate her employment. Barrow denied the allegations regarding the food stamps and indicated that she did not believe the matter had been properly investigated.

{¶ 9} On August 12, 2016, Barrow and Shaw filed a complaint seeking damages under R.C. 4112.99 based upon the claim that their termination was racially motivated in violation of R.C. 4112.02. Access filed a Civ.R. 12(B)(6) motion to dismiss Shaw's complaint. Access argued that Shaw's statement in the complaint that she was terminated "solely on the basis that she was Plaintiff Barrow's mother" negated any claim of racial discrimination. Shaw thereafter filed a response in which she stated the following:

> Michelle Shaw is alleging that due to her race African-American and the fact
> that she was Plaintiff Elaine Barrow (also an African American) mother [sic],
> she was treated disparatively [sic] by Defendant and terminated. The
> phrase in question, "solely on the basis she was Elaine Barrow's mother"
> was intended to assert that there was no legitimate business reason for the
> termination. To the extent that the Court believes this language is
> confusing, Plaintiff requests leave to file an Amended Complaint to state
> that her termination was based on her race and that no legitimate business

reason existed for her termination.

Dkt. No. 11.

{¶ 10} The trial court found that Shaw's complaint set forth a non-discriminatory reason for her termination, i.e., her familial relationship to Barrow, and, thus, it did not articulate a viable cause of action for race discrimination. The trial court further found that Shaw had failed to identify how she would cure the defect in the complaint. The trial court granted the motion to dismiss and denied the request to amend.

{¶ 11} Discovery was conducted, following which Access filed a motion for summary judgment against Barrow. The trial court granted the motion. Barrow and Shaw appeal.

## II. Barrow Analysis

{¶ 12} Barrow's sole assignment of error states:

THE TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT'S RACIAL DISCRIMINATION CLAIM.

{¶ 13} Barrow contends that the trial court erred in rendering summary judgment against her.

{¶ 14} "* * * [S]ummary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). "The party moving for summary judgment bears the burden of showing that there

is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Id.*, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶ 15} R.C. 4112.02 provides that it is an unlawful discriminatory practice "[f]or any employer, because of the race * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02(A).

{¶ 16} "When an individual brings a discrimination claim in Ohio for violation of R.C. 4112.02, the Ohio Supreme Court has held that 'federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable * * *.' " *Shepard v. Griffin Servs., Inc.*, 2d Dist. Montgomery No. 19032, 2002 WL 940110, * 3 (May 10, 2002), quoting *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981). "In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment." *Henderson v. Cincinnati Bell Long Distance, Inc.*, 113 Ohio App.3d 793, 796, 682 N.E.2d 41 (1st Dist.1996). "First, the plaintiff has the burden of proving by the preponderance of the

evidence a prima facie case of discrimination." *Id.* If the plaintiff establishes a prima facie case, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the termination. *Hapner v. Tuesday Morning, Inc.*, 2d Dist. Montgomery No. 19395, 2003-Ohio-781, ¶ 14. "This burden is one of production, not persuasion; 'it can involve no credibility assessment.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the employer is able to articulate a race-neutral basis for the adverse employment action, then the burden shifts back to the plaintiff who must prove by a preponderance of the evidence that the employer's proffered reasons for her dismissal were pretextual. *Id.* at 143.

{¶ 17} A plaintiff may establish "a prima facie case of discrimination [in violation of R.C. 4112.02(A)] either by direct evidence or circumstantial evidence." *Shepard* at *3, citing *Teamsters v. United States*, 431 U.S. 324, 357-58, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). "Direct evidence is 'evidence which, if believed, proves the existence of improper discrimination animus without inference or presumption.' " *Id.*, quoting *Williams v. United Dairy Farmers*, 20 F.Supp.2d 1193, 1198 (S.D.Ohio 1998). Under the direct evidence standard, "an employee must prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination to establish a violation [of R.C. 4112.02]." *Byrnes v. LCI Communication Holdings Co.*, 77 Ohio St.3d 125, 130, 672 N.E.2d 145 (1996). "Absent some causal connection or link between an employer's discriminatory statements or conduct and a plaintiff-employee, there is no permissible inference that the employer was motivated by discriminatory animus to act

against the plaintiff-employee." *Id.*

{¶ 18} We agree with the trial court that Barrow failed to present any direct evidence of discriminatory animus. Barrow does not claim that any supervisor, manager, operations manager or any other employee of Access made any racist comments or engaged in any other overtly racist conduct with regard to her or anyone else employed by Access. Further, she has not presented, and does not claim the existence of, any documents from which racial animus may be discerned or implied.

{¶ 19} In the absence of direct evidence, a plaintiff may establish a prima facie case by circumstantial evidence which "creates a presumption that some illegitimate factor, such as race or gender, played a role in an employer's decision-making process." *Shepard* at *4, quoting *Williams* at 1198. This is done through the test set forth in *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. *Id.* The analysis requires that the plaintiff-employee demonstrate that: (1) she is a member of the protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the position; and (4) someone outside the class either replaced her or was treated differently than her. *Id.*

{¶ 20} Barrow is a member of a protected class and was the subject of an adverse employment action. However, she was not replaced by someone outside her class and she has not shown that anyone outside her class was treated differently. With regard to Barrow's replacement, Access submitted the affidavit of Patty Parsley in support of its motion for summary judgment. In her affidavit, Parsley averred that an African-American man was hired to replace Barrow. A copy of the man's signed acceptance letter, showing that he was hired as a Chemical Dependency Counselor Assistant to work the

shift that Barrow had worked, was attached to the affidavit. The only evidence proffered by Barrow regarding her replacement is her deposition testimony stating that she was informed by another Access employee, whose name she could not remember, that a white man was hired to replace her. This does not constitute competent evidence sufficient to rebut the evidence submitted by Access. Barrow appears to acknowledge her failure to rebut the Access evidence, as she does not address this issue in her appellate brief.

{¶ 21} Finally, while Barrow attempts to argue that she was treated differently than other similarly situated white employees, we agree with the trial court that she was unable to present any evidence to support such a claim. "To be similarly situated, the parties to be compared must have dealt with the same supervisor, have been subjected to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Smith v. Expressjet Airlines, Inc.*, 8th Dist. Cuyahoga No. 101336, 2015-Ohio-313, ¶ 15; *Smith v. Kelly*, 2d Dist. Clark No. 2011 CA 77, 2012-Ohio-2547, ¶ 21. The record is devoid of any evidence that any of the individuals to whom Barrow compares herself were alleged to have engaged in the conduct of purchasing food stamps from resident clients.

{¶ 22} Despite the lack of direct evidence and the failure to meet the *McDonnell Douglas* test, Barrow contends that the record contains evidence of racial discrimination that demonstrates a genuine issue of material fact. Specifically, in her response to the motion for summary judgment, Barrow raised claims of retaliation and a hostile work environment. She alleged that around Halloween, two Caucasian residents known as

Donnie and Travis painted a skeleton black and hung it by a noose on their dormitory door, along with a sign that had "Hi Elaine" written on it. Barrow also claimed that Donnie had referred to her as a "n*****" on numerous occasions. Barrow argued that the use of the skeleton and the racial language demonstrate that she was forced to work in a hostile work environment. She also contended that Access permitted the hostile work environment to exist. Barrow claimed that she was terminated in retaliation for reporting the actions of Donnie and Travis. Even though neither a hostile work environment nor a retaliation cause of action was asserted in the complaint, we will address each.

{¶ 23} "To establish a claim brought under R.C. Chapter 4112 against an employer for hostile work environment created by sexual or racial harassment, a plaintiff must establish: (1) the employee was a member of the protected class, (2) the employee was subjected to unwelcome harassment, (3) the harassment complained of was based upon sex or race, (4) the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment, and (5) the existence of respondeat superior liability. *Smith v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 78274, 2001 WL 605405, *3 (May 24, 2001), following *Harris v. Forklift System, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Barrow cites *Smith v. Superior Prod.*, 2014-Ohio-1961, 13 N.E.3d 664 (10th Dist.) for the proposition that significant racial comments can create a racially hostile work environment.

{¶ 24} We conclude that the claim for hostile work environment must fail; Barrow has failed to demonstrate the existence of respondeat superior liability as neither Donnie nor Travis was an employee of Access. *See Byrd v. Faber*, 57 Ohio St.3d 56, 58, 565

N.E.2d 584 (1991). And, as stated above, Barrow does not claim that that any employee of Access was involved with the skeleton or Donnie's statements. Barrow has failed to show that the comments made by Donnie were more than isolated remarks by a residential client undergoing substance abuse rehabilitation. Indeed, in her deposition she admits that she heard Donnie use the word "n***** maybe three times," and that it was directed to her only once. These remarks were not made by any agent or decision-maker of Access. In fact, Barrow does not claim that any employee of Access made racial remarks to her, about her, or in her presence. Barrow does not claim that her work was affected by the conduct or statements, and maintains that her work performance was excellent. She did not miss any work as a result of the conduct. Although the challenged remarks are abhorrent and demeaning, they appear to be isolated and not made by any agent, employee or decision-maker of Access. Further, we find the facts in *Superior Production* distinguishable. Therein, the person using the racial slurs was a part-owner of the business that employed the plaintiff and that owner participated in the decision-making process to terminate the plaintiff's employment. Thus, we conclude that the Civ.R. 56 record does not create a genuine issue of material fact that Barrow was subjected to a hostile work environment or that such an environment was a factor in her employment termination.

{¶ 25} Barrow next contends that she was terminated in retaliation for reporting the behavior of Donnie and Travis. In order to establish a prima facie case of retaliation under R.C. 4112.02(I), a plaintiff must prove the following elements: (1) she engaged in a protected activity; (2) the employer knew of plaintiff's participation in the protected activity; (3) the employer engaged in retaliatory conduct; and (4) a causal link exists

between the protected activity and the adverse action. *Carney v. Cleveland Hts.-Univ. Hts. City School Dist.*, 143 Ohio App.3d 415, 428, 758 N.E.2d 234 (8th Dist. 2001).

{¶ 26} Barrow has not specifically alleged nor presented any evidence to establish that she was engaged in a protected activity. She has not demonstrated that she was acting to oppose any unlawful discriminatory practice or that she was participating in an investigation under R.C. Chapter 4112. *See Veal v. Upreach, L.L.C.*, 10th Dist. Franklin No. 11AP-192, 2011-Ohio-5406, ¶ 18.

{¶ 27} Finally, Barrow contends that the contrast between Access's actions regarding her complaint of a hostile work environment and the actions it took regarding the food stamps allegation demonstrates discrimination. Specifically, she claims that Access did not investigate nor remedy the problems caused by Donnie and Travis, but it did initiate "an extensive investigation talking to numerous individuals, both residents and employees" regarding the food stamps allegations.

{¶ 28} We reject this claim as well because the record contains competent evidence that Wolfe attempted to investigate the skeleton incident, but Wolfe was not able to find the skeleton itself or otherwise confirm the incident. Barrow does not cite any evidence to rebut this claim other than to testify that she continued to see the skeleton. Her claim of lack of investigation is based upon mere conjecture.

{¶ 29} Barrow has not demonstrated a prima facie case of race discrimination through either direct or indirect evidence. Thus, the trial court did not err in granting summary judgment in favor of Access.

{¶ 30} Barrow's sole assignment of error is overruled.

### III. Shaw Analysis

**{¶ 31}** Shaw asserts the following two assignments of error:

[THE] TRIAL COURT ERRED WHEN IT DISMISSED APPELLANT MICHELLE SHAW'S RACIAL DISCRIMINATION CLAIM.

THE TRIAL COURT ERRED WHEN IT REFUSED TO ALLOW APPELLANT TO AMEND HER COMPLAINT.

**{¶ 32}** Shaw contends that the trial court erred by dismissing, and failing to permit her to amend, her complaint.

**{¶ 33}** "A motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Civ.R. 12(B)(6), tests the sufficiency of a complaint. In order to prevail, [it must appear beyond doubt from the complaint] that the plaintiff can prove no set of facts entitling him to relief." *Maga v. Brockman*, 185 Ohio App. 3d 666, 2010-Ohio-382, 925 N.E.2d 208, ¶ 9 (2d Dist.), quoting *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. "The court must construe the complaint in the light most favorable to the plaintiff, presume all of the factual allegations in the complaint to be true, and make all reasonable inferences in favor of the plaintiff." *Id.*, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). "We review de novo the trial court's granting of a Civ.R. 12(B)(6) motion to dismiss." *Id.*, citing *Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 16 (2d Dist.).

**{¶ 34}** As noted, the complaint alleges that Access "elected to terminate [Shaw] at the same time [as Barrow,] solely on the basis that she was Plaintiff Barrow's mother." The trial court found that Shaw's "own complaint establishes a non-discriminatory

explanation for [the] termination of Plaintiff Shaw's employment – i.e., that it already had fired her daughter. On its face, a decision based on an employer's understandable reluctance to retain an employee whose daughter the employer had just fired no way implicates the race or other protected characteristic of the employee/mother." Dkt. No. 14, p. 6. We agree. R.C. 4112.02 does not prohibit an employment termination based upon a family relationship to another employee. Thus, we cannot conclude that the trial court erred in this finding.

{¶ 35} We next turn to whether the trial court abused its discretion by denying Shaw the opportunity to amend.

{¶ 36} Civ.R. 15(A)1 states, in relevant part, that:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires. * * *[4]

{¶ 37} The record indicates that Shaw filed her complaint on August 12, 2016. Access filed its Civ.R. 12(B) motion to dismiss on September 13, 2016, which started the 28 day clock for Shaw to amend her complaint without the consent of Access or leave of court, a time period ending October 11, 2016. However, the record clearly indicates that

---

[4] We note that Civ.R.15(A) was amended effective July 1, 2013. Ms. Shaw appears to have been following the prior version of the rule.

instead of filing an amended complaint, Shaw, on September 26, filed a response to the motion to dismiss and, alternatively, a motion for leave to amend. No amended complaint was filed within the 28 days provided by Civ.R. 15(A). Any subsequent amendment could only be made by leave of court. The trial court's decision granting the motion to dismiss and denying leave to amend was filed on October 13, 2016, outside the 28-day time period for amending without leave.

{¶ 38} Civ.R. 15(A) provides that leave of court shall be freely given when justice so requires. It is well established that a trial court's determination whether to grant a motion for leave to amend a complaint will not be reversed on appeal absent an abuse of discretion. *Hull v. Dietrich*, 2d Dist. Miami No. 97-CA-32, 1997 WL 797732, * 7 (Dec. 31, 1997), citing *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). To prove an abuse of discretion, it must be demonstrated that the trial court's denial of a motion to amend was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 140 (1983). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Wiebusch v. Wiebusch*, 186 Ohio App.3d 237, 2010-Ohio-504, 927 N.E.2d 64, ¶ 9 (2d Dist.). " 'A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.' *AAAA Enterprises, Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161[, 553 N.E.2d 597]." *Id.* at ¶ 10, quoting

*Fink v. Fink*, 2d Dist. Champaign No. 08CA24, 2009-Ohio-4948, ¶ 5-6.

**{¶ 39}** Shaw neither submitted an amended complaint for filing instanter nor indicated what facts or allegations she would offer to cure the defect of admitting a non-discriminatory reason for her termination. Thus, we cannot say that the trial court abused its discretion by denying her request to amend.

**{¶ 40}** Accordingly, Shaw's assignments of error are overruled.

### IV. Conclusion

**{¶ 41}** All of the assignments of error asserted by Shaw and Barrow are overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

FROELICH, J., concurring:

**{¶ 42}** I write separately only to clarify any implications in our opinion that a hostile work environment claim requires that the employee's work performance must be affected and/or that the offensive remarks be made by an agent or decision-maker of the employer.

**{¶ 43}** As noted by the United States Supreme Court, "Title VII bars conduct that would seriously affect a reasonable person's psychological well-being, but the statute is not limited to such conduct. So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious." (Citation omitted.) *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). *See also Clinton v. Faurecia Exhaust Sys., Inc.*, 2d Dist. Miami No. 2012-CA-1, 2012-Ohio-4618, ¶ 42.

**{¶ 44}** Further, a hostile work environment claim may exist if the employer is or should be aware of such environment and fails to take remedial action, even if it were not the employer or anyone with respondeat superior liability that directly created the situation.

**{¶ 45}** However, in this case's summary judgment posture, Barrow did not present any evidentiary material to create a genuine issue of material fact that her termination was the product of unlawful discrimination, that Access created or failed to address a hostile work environment, or that Access unlawfully retaliated against her. Accordingly, I agree that the trial court properly granted Access's motion for summary judgment.

. . . . . . . . . . . . .

Copies mailed to:

David M. Duwel
Priscilla Hapner
Hon. Mary Lynn Wiseman