DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Washington County Common Pleas Court judgment. Following a bench trial, the trial court found in favor of Wilbert Weckbacher, Dorothy Weckbacher, William Weckbacher and Melissa Weckbacher, (Weckbachers), defendants below and appellees herein, on the claims brought against them by Positron Energy Resources, Inc. (Positron) and Stonebridge Operating Co. (Stonebridge), plaintiffs below and appellants herein.
 {¶ 2} Positron assigns the following errors for review:
 FIRST ASSIGNMENT OF ERROR: *Page 2 
 "THE TRIAL COURT ERRED IN FAILING TO PROPERLY SET FORTH ITS FINDING OF FACT AND CONCLUSIONS OF LAW, IN ACCORDANCE WITH OHIO RULES OF CIVIL PROCEDURE 41(B)(2) AND 52 AFTER TIMELY REQUEST WAS MADE."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' MOTION FOR DIRECTED VERDICT."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FAILING TO ALLOW THE PLAINTIFFS TO REOPEN THEIR CASE IN CHIEF OR AFFORD THEM A NEW TRIAL."
 FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN FAILING TO DECLARE THAT THE WECKBACHER NO. 1 AND BALL NO. 1 OIL AND GAS WELLS AND UNDERLYING LEASES WERE VALID."
 {¶ 3} On September 20, 1979, Leland and Hester Ball executed an oil and gas lease with Berresford Enterprises (Berresford) for a primary term of ninety days, and as long thereafter as "paying quantities" of oil and gas are found (the Ball lease). On December 1, 1979, Wilbert and Dorothy Weckbacher also executed an oil and gas lease with Berresford for a primary term of two months and twelve days, and so long thereafter as oil and gas in paying quantities are found on the premises (the Weckbacher lease).
 {¶ 4} Although the record is somewhat unclear, Leland Ball presumably passed away sometime before 1995, at which time Hester conveyed the land to William Weckbacher and reserved a life estate for herself. A February 13, 2001 affidavit in the Washington County Recorder's Office noted Hester Ball's death and termination of her *Page 3 
life tenancy. While determining title in the surface estate is relatively uncomplicated, determining title for the mineral estate is more difficult. As defense counsel explained in his opening argument, "we've all said that most oil and gas histories [in Washington County] are tortured, are messed up and are confused and are inappropriate, and it would take a genius to straighten them out." Counsel then described this particular case as even worse than the normal — "a tortured, incredibly weird oil and gas case."
 {¶ 5} A number of highly unusual mesne conveyances of the oil and gas leases occurred during Berresford ownership. In 1995, Positron acquired the Ball and Weckbacher leases from Berresford.[1] Eddy Biehl, whose family has a long history with the oil and gas industry, is a part owner of Positron and Stonebridge, which he described as the "operating entity" that provides day-to-day care and servicing for "working interests" that Positron has in a large portfolio of oil and gas wells.
 {¶ 6} In 2005, several Stonebridge employees started to install a new meter and pipelines at well-heads on the Ball and Weckbacher leases. Wilbert Weckbacher ordered them to leave his property, and William Weckbacher appeared with a shotgun to emphasize his father's demand. Although William discharged his weapon, it was apparently not aimed at anyone and no injuries occurred. Law enforcement officers arrived later, but did not arrest the younger Weckbacher. Instead, they informed *Page 4 
Stonebridge's employees that they needed a court order to enter the land.
 {¶ 7} Appellants commenced the instant action on October 24, 2005 and alleged that appellees interfered with their interests in the two leases.[2] Appellants requested $4,500 in damages for the expenses they incurred when appellees prohibited them from installing new equipment, as well as a temporary restraining order and permanent injunction to bar future interference with their leasehold interests. A subsequent amended complaint asked for declaratory relief that the leases, and an accompanying right-of-way, are valid. Appellees denied liability and counterclaimed for (1) an accounting of royalties from the two leases, and (2) damages for trespass on their property. Appellants denied the allegations in the counterclaim.
 {¶ 8} At the bench trial, a dizzying array of evidence was adduced concerning the chain of title for the mineral rights and the operational history of the Ball and Weckbacher leases. On the second day, at the conclusion of appellants' case in chief, appellees requested a directed verdict on the grounds that the language in the leases, as well as Positron's own records, showed that the leases had lapsed and are now void. The trial court took the matter under advisement.
 {¶ 9} On August 1, 2007, the trial court filed an extensive, twelve page decision that granted the motion for a directed verdict. Citing language from both leases to the effect that the instruments would expire during a secondary term if production ceased for more than sixty days, the court noted that appellants' own evidence revealed large swaths of time in the 1980s and 90s when no production occurred on either well. Thus, under the express terms of the leases, the interests expired and neither Positron nor *Page 5 
Stonebridge has a valid interest in the Weckbachers' property. Two weeks later, the Weckbachers dismissed the counterclaim against Positron and Stonebridge.
 {¶ 10} On August 28, 2007, appellants filed a twenty-nine page, multi-part motion (1) for new trial, (2) for leave to reopen their case, and (3) to vacate the directed verdict. The trial court's nineteen page entry denied those motions. The next day, appellants requested findings of fact and conclusions of law. On November 14, 2007, without responding to appellants' Civ. R. 52 request, the trial court issued a final judgment in the Weckbachers' favor. This appeal followed.
 I {¶ 11} Appellants assert in their first assignment of error that the trial committed reversible error by not issuing its Civ. R. 52 findings of fact and conclusions of law. Although we agree that the better practice is to issue such findings when requested to do so, for the following reasons we find no error in the case sub judice.
 {¶ 12} Civ. R. 52 requires a trial court to issue findings when requested in a timely manner. However, "[a]n opinion or memorandum of decision filed in the action prior to judgment . . . containing findings of fact and conclusions of law stated separately" will suffice so long as they provided an adequate basis to decide the case. Id.; also seeStone v. Davis (1981), 66 Ohio St.2d 74, 85, 419 N.E.2d 1094;Mahlerwein v. Mahlerwein, 160 Ohio App.3d 564, 828 N.E.2d 153,2005-Ohio-1835, at ¶ 22. In the case sub judice, the trial court issued a detailed, twelve page opinion that granted appellees' motion for directed verdict. This opinion, together with the record, including an equally extensive decision to deny the motion for new trial, provides us more than an adequate basis to review this matter and to decide this appeal. *Page 6 
 {¶ 13} Accordingly, based upon the foregoing reasons, we find no merit to the first assignment of error and it is hereby overruled.[3]
 II {¶ 14} We jointly consider parts of appellants' second and third assignments of error because, when taken together, they are dispositive of this appeal. Positron and Stonebridge argue, inter alia, that the trial court erred by granting a directed verdict to the Weckbachers without giving appellants the opportunity to reopen their case and address the evidentiary deficiencies the trial court cited in its decision to grant the motion for directed verdict.
 {¶ 15} Our analysis begins from the proposition that under Civ. R. 50(A)(4), a motion for a directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Groob v. Keybank, 108 Ohio St.3d 348, 843 N.E.2d 1120,2006-Ohio-1189, at ¶ 14; Gibson v. Drainage Products, Inc.,95 Ohio St.3d 171, 766 N.E.2d 982, 2002-Ohio-2008, at ¶ 20. Motions for directed verdict involve questions of law, not factual issues. However, when deciding such a motion it is necessary to review and consider the evidence. Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co.,95 Ohio St.3d 512, 769 N.E.2d 835, 2002-Ohio-2842, at ¶ 4; Wagner v. *Page 7 Roche Laboratories (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252. Additionally, because we are presented with a question of law, we apply a de novo standard of review to the trial court's decision. SeeGoodyear Tire Rubber Co. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512,769 N.E.2d 835, 2002-Ohio-2842, at ¶ 4; Cleveland Elec. Illum. Co. v.Pub. Util. Comm. (1996), 76 Ohio St.3d 521, 523, 668 N.E.2d 889.
 {¶ 16} In the case sub judice, the Ball lease provided a primary term that lasted until the end of 1979, unless oil and gas operations are conducted on the premises, or oil and gas is found in paying quantities. The Weckbacher lease had similar provisions, although its primary term would have expired in February 1980. In its decision to grant a directed verdict, the trial court explicitly cited the testimony of the Weckbachers' expert, Attorney Gary Frye, that the two leases were in their secondary terms. That said, the leases are now controlled by the paragraph fourteen language:
 "It is expressly agreed that if the Lessee shall commence drilling operations at any time while this lease is in force, it shall remain in force and its terms continue so long as such operations are prosecuted, and if production results therefrom, then as long as production continues. If after the expiration of the term of this lease production from the leased premises shall cease from any cause, this lease shall not terminate provided Lessee resumes operations within sixty days from such cessation, and this lease shall remain in force during the prosecution of such operations, and, if production results therefrom, then as long as oil or gas is produced in paying quantities."
 {¶ 17} The trial court's August 1, 2007 decision to grant a directed verdict explained that appellants adduced no evidence to show production with regard to the Ball Lease from 1985 to 1992. Similarly, with regard to the Weckbacher Lease, the court found no evidence to show production from 1989 to 1992. We take no issue with these factual findings, but merely recite them in order to address appellants' specific arguments. *Page 8 
 {¶ 18} First, appellants contend that the trial court erroneously placed the burden of proof on them to prove production. Appellants suggest that, as a matter of oil and gas law generally, the burden should be placed on the lessor to prove non-production. We disagree. The burden of proof question is not controlled by substantive oil and gas law, but rather procedure. Appellants' second amended complaint asked for a declaratory judgment that the two leases are "valid." To prove that the leases are valid, however, it is necessary to prove they are still in effect. To do so, appellants must prove that no gaps occurred in production for more than sixty days.
 {¶ 19} Generally, the party who asserts a claim carries the burden of proving that claim. See Huntington Natl. Bank v. Chappell, Lorain App. No. 06CA8979, 2007-Ohio-4344, at ¶ 18; Cunningham v. Cunningham, Cuyahoga App. No. 88384, 2007-Ohio-2503, at ¶ 12. This includes the obligation to demonstrate the existence of any fact necessary to the prosecution of the claim. Hahn v. Satullo, 156 Ohio App.3d 412,806 N.E.2d 567, 2004-Ohio-1057, at ¶ 50, citing Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 567 N.E.2d 1291. Here, appellants asserted a claim for declaratory judgment that the oil and gas leases are valid. Thus, the trial court correctly placed the burden on appellants to demonstrate that the leases are still in effect. However, we agree with the argument advanced in appellants' third assignment of error that the trial court should have provided Positron and Stonebridge an opportunity to reopen the case to address this issue. In their August 20, 2007 motion, appellants claimed to have located a letter from Wilbert Weckbacher (allegedly found after the directed verdict was granted) that spoke about the production of "Weckbacher Well #1" during its "17 years of life." This 1996 letter covers a portion of the time period that allegedly had no oil or gas *Page 9 
production. We also point out that when cross-examined concerning the due diligence Positron exercised before it purchased the oil and gas leases from Berresford, Eddy Biehl testified:
 "I think I testified earlier that, in fact, I spent two days looking at accounting and legal records and that sort of thing at Berrisford's offices in Akron, and I spent at least a couple of days looking at records and going over production histories and field operations with the Welches, and we'd identified some wells that were was some issues with that were addressed separately; the Ball and Weckbacher were not on that list, as to having legal issues or production issues, when we closed with Berrisford." (Emphasis added.)
This testimony, if viewed as truthful, as it must when resolving a Civ. R. 50 motion, suggests that evidence of production may exist in Berresford's files.[4]
 {¶ 20} As appellants correctly note, in Matthew v. City Ice FuelCo., Gallia App. No. 81CA6, this court acknowledged that "[i]t is within the sound discretion of the trial judge to permit a party to re-open its case and introduce further evidence once it has rested. However,where the defendant moves for a directed verdict under Civ. R. 50(A), or judgment pursuant to Civ. R. 41 (B)(2) because of a lack of evidence on an essential element of the plaintiff's claim, the trial court must be verycautious in exercising its discretion and should generally liberallyallow the plaintiff to reopen his case." (Emphasis added.) (Citations omitted.) To deny a plaintiff the opportunity to prove a fact, and then direct a verdict for the failure to prove that fact, has been held to *Page 10 
constitute an abuse of discretion. See Siegal v. Portage Yellow CabCo. (1925) 23 Ohio App. 438, 441, 155 N.E. 145; Courtney v.Beadnell (Jul. 19, 1988), Mahoning App. No. 87CA151.
 {¶ 21} Therefore, in light of the particular facts and circumstances in this case, we conclude that the trial court should have permitted appellants to reopen their case to present additional evidence regarding oil and gas production on the Ball and Weckbacher leases before it directed a verdict against them on that issue. Our ruling is buttressed by the general principle that cases should be decided, when possible, on their merits rather than procedural rules, see Salisbury v. Smouse, Pike App. No. 05CA737, 2005-Ohio-5733, at ¶ 22; Marcinko v. Carson, Pike App. No. 04CA723, 2004-Ohio-3850, at ¶ 31, fn. 7, and the trial court's cogent observation that "rights in real estate" are of "utmost importance to a regulated democratic society and a capitalist economy." Although the court made these remarks in regard to the surface estates, we believe that it applies with equal importance to mineral estates. Those valuable interests should not be terminated if evidence exists to show they are, indeed, valid interests in land.
 {¶ 22} In summary, we agree with the trial court that Positron and Stonebridge have the burden to prove continuous production (with gaps no longer than 60 days) because they requested a declaratory judgment that the oil and gas leases are valid. Further, we do not disturb the trial court's ruling that the evidence, as it currently stands, does not satisfy that burden. We, however, disagree with the trial court's decision that appellants should not be permitted to reopen their case in order to present additional evidence before judgment was rendered against them. On these bases only, we *Page 11 
hereby overrule appellants' second assignment of error and sustain appellants' third assignment of error.[5] Having sustained appellants' third assignment of error, the reminder of the second assignment of error and the fourth assignment of error have been rendered moot and will be disregarded. See App. R. 12(A)(1)(c).
 {¶ 23} Accordingly, we hereby reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.
JUDGMENT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
[1] Gary Frye, an attorney whose practice is largely devoted to title work and is a member and former president of the Ohio Land Title Association, testified that he examined the title to the mineral estates at issue and is satisfied that Positron held clear title to those estates, notwithstanding some of the recordings made when Berresford held title. Because this case was decided on issues other than who has title and standing to sue, and considering that title issues were not raised in this appeal, we assume for purposes of our analysis that no cloud exists on Positron's title to the mineral estate and that it has the proper standing to bring this lawsuit.
[2] Melissa Weckbacher was added as a party defendant on May 18, 2007.
[3] Generally, the absence of Civ. R. 52 findings of fact and conclusions of law means that no final appealable order exists in the case and the appeal must be dismissed. See Savage v. Cody-Ziegler,Inc., Athens App. No. 06CA5, 2006-Ohio-2760, at ¶ 13; First Natl. Bankv. Netherton, Pike App. No. 04CA731, 2004-Ohio-7284, at ¶ 8. However, for the same reasons that we found no reversible error in not filing separate findings of fact and conclusions of law, we also conclude that the judgment appealed herein is final and appealable such that we have jurisdiction to hear this case.
[4] In view ofthe rigorous standard to be applied to a Civ. R. 50(A)(4) motion, Biehl's testimony may well have been sufficient to defeat a directed verdict. We do not directly address that question, however. Instead, we base our decision solely on the issue that the trial court should have allowed Positron to reopen its case. We also hasten to add that this point should not be misconstrued as criticism for the trial court, which does not have the leisure that this court possesses to sift through a nearly three hundred page transcript to find a single sentence that supports one point and one party or the other.
[5] The trial court's November 6, 2007 decision to overrule appellants' various post-trial motions also contained a statement that by introducing evidence of earlier oil and gas production, "[appellant's] were attempting to impeach or contradict the ODNR [Ohio Department of Natural Resources] records" that showed no production for that time period. The court said that the "[i]ntroduction of evidence for this purpose is specifically prohibited under Ohio law." Whether such evidence is prohibited or not, and we are not aware of any specific provision to prevent it, the fact is that appellants would not be introducing records from Berresford to impeach or contradict ODNR but, rather, to supplement information which may not have been reported to the agency. Gary Frye testified that production information is not always correctly reported to ODNR.