[Cite as *Martcheva v. Dayton Bd. of Edn.*, 2021-Ohio-3524.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JENNIFER MARTCHEVA | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29144 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-3897 |
| | : | |
| DAYTON BOARD OF EDUCATION, et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of October, 2021.

. . . . . . . . . . .

PETER K. NEWMAN, Atty. Reg. No. 0010468, 594 Garden Road, Dayton, Ohio 45419
    Attorney for Plaintiff-Appellant

DAVID J. LAMPE, Atty. Reg. No. 0072890, JASON R. STUCKEY, Atty. Reg. No. 0091220, AARON ROTHEY, Atty. Reg. No. 0098825, 312 North Patterson Boulevard, Suite 200, Dayton, Ohio 45402
    Attorneys for Defendants-Appellees

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} This appeal stems from an employment dispute between Plaintiff-Appellant Jennifer Martcheva and Defendant-Appellee the Dayton Board of Education ("BOE"). Various school employees and students are also parties to the case. Martcheva appeals the judgment of the trial court sustaining the BOE's and individual defendants' motions for summary judgment while overruling her related motion for summary judgment against the BOE and named defendants. Martcheva also appeals the trial court's judgment in relation to its determination of damages pursuant to her administrative appeal. Finally, Martcheva appeals the trial court's judgment granting attorney fees to the BOE. For the reasons that follow, the trial court's judgments will be affirmed.

## I. Facts and Procedural History

{¶ 2} Martcheva was hired by the BOE in 2009 to teach social studies at Louise Troy Elementary School. She taught seventh and eighth graders there for three years before being transferred to Charity Adams Earley Academy for Girls ("Charity Adams") after the 2011-2012 school year. At Charity Adams, Martcheva taught seventh and eighth grade social studies through the 2017-2018 school year. She then transitioned to teaching fourth grade, beginning in 2018-2019.

{¶ 3} As a fourth-grade teacher, Martcheva co-taught with Kelli Vukovic-Burkhardt. Each woman had her own homeroom class but focused on different subjects; Martcheva taught language arts and social studies while Vukovic-Burkhardt taught math and science. Their classes switched twice during the day.

{¶ 4} In the fall of 2018, several girls (all from Vukovic-Burkhardt's homeroom class) made accusations against Martcheva. On October 1, 2018, Student One told her

mother, Tequina Clark, that Martcheva said she wanted to strangle a girl in her class because the girl would not stop talking. Student One also informed her mother that she heard Martcheva say she wanted to bring a gun to school. According to her mother, Student One independently told four adult family members the same story.

{¶ 5} On October 2, 2018, Clark informed Carla Goins, the school's principal, and America Henson, the assistant principal, about the allegations. Student One confirmed to Goins and Henson that it was Martcheva who made the statements and that she was fearful. The administrators had Clark and Student One write statements, and Student One provided the names of other students who may have heard the comments.

{¶ 6} After the meeting with Student One and Clark, Goins notified the district's human resources department. Goins was instructed to collect statements from anyone who may have overheard the comments made by Martcheva.

{¶ 7} On October 3, 2018, Henson spoke with the five students that Student One suggested might have heard the comments. Henson asked the students open-ended questions and Students Two and Three stated that Martcheva had made threats against students. After speaking with them, Henson directed Student Two and Student Three to go to the school resource officer to write down statements. Student Two stated that Martcheva said she was going to use a shotgun to kill herself. Student Three's statement focused on three things: (1) that Martcheva wanted to strangle a particular student because she was making her mad; (2) that Martcheva was going to bring a shotgun to school to shoot herself in the head; and (3) that if a particular student were Martcheva's child, she would whoop that girl so bad she would go to jail.

{¶ 8} Henson testified that she believed the students, and that one thing in

particular stood out – each of the students used the word "shotgun" in their accounts, a term rarely used in the African American community. Goins also testified to that peculiarity and asserted that she, too, did not believe the girls had made up their statements.

{¶ 9} After reading the girls' statements, Goins once again contacted human resources (HR). She explained that there were three students with corroborating accounts and then turned the statements over to HR. After reviewing the documents, HR determined that the allegations were serious enough to merit placing Martcheva on paid administrative leave pending an investigation.

{¶ 10} The same day, HR informed Martcheva that serious allegations had been made against her and that she would be placed on paid administrative leave. Martcheva testified that she was extremely confused as to why she was being put on leave, and once it was explained to her that there was an allegation related to a shotgun, she clarified that she had talked about how shotguns are used for hunting in a recent lesson about Ohio history. She was informed that an investigation would be conducted and a determination about her future would be made based on the findings. Martcheva was then escorted from the building.

{¶ 11} Later that day, Martcheva sent the following email to David Romick, the teachers' union president, to provide further context about her situation.

Late last week (Wednesday and Thursday) I was teaching a lesson over Ohio History. The passage being taught dealt with "Ohio and the Midwest" pgs. 14-15. The passage discusses Western v. Eastern Ohio – rural areas and their livelihoods, as well as Cities like Dayton in the West and their livelihoods – natural resources v. resources – statewide. I mentioned that I

grew up on a farm in Eastern KY much like Eastern Ohio with coal mining and country ways of life. I told a story about my dad being an educator, pastor, and a hunter by sport. That he had taught all of us kids (3) how to shoot a gun even when we were small. And if [sic] fact he taught my own kids how to shoot skeet when they were in fourth grade. We discussed that I lived on a farm 20 miles away from the nearest grocery store. And that I have eaten wild game for dinner many times. * * *

{¶ 12} The internal investigation was conducted by Tracy Hines, one of the district's school safety liaisons. Hines testified that neither the students nor Martcheva were interviewed because that had already been done, and to check the students' credibility, she inquired about their disciplinary records. None of the girls had been suspended, but one had a discipline referral. After reviewing the statements given by the students, principals, and Clark, Hines summarized the allegations in a memorandum that was submitted to HR on October 16, 2018.

{¶ 13} The district conducted a pre-disciplinary hearing on October 30, 2018. In a report filed on November 16, 2018, the hearing officer, Barbara Stahl, recommended that Martcheva be fired, and on November 19, 2018, Martcheva was informed of the intent of the BOE to terminate her contract. On December 18, 2018, the BOE voted to suspend Martcheva, without pay or fringe benefits, pending the termination proceedings.

{¶ 14} On November 23, 2018, Martcheva requested an administrative hearing with a referee at the Ohio Department of Education. The hearing was held before referee John Butz on March 13-14, 2019, and in his May 16, 2019, decision, Butz made several findings. The referee determined that the BOE had failed to conduct a full and fair

investigation into the allegations made against Martcheva, going as far as stating that "the investigation in this matter was inadequate and woefully flawed." He found that no further meaningful investigation was conducted after the students made their statements, that Martcheva was never interviewed by anyone involved in the investigation, and that her pre-disciplinary hearing was conducted by a district employee who was not impartial. As to the allegations, Butz found that the students' statements were not entirely consistent and that Martcheva "categorically denied" all the allegations against her.

{¶ 15} Ultimately, Butz concluded that the record did not support a finding of good and just cause to terminate Martcheva and recommended that her contract not be terminated. Despite the conclusion of the referee, the BOE voted to reject the referee's decision, and Martcheva's contract was terminated on September 17, 2019.

{¶ 16} Through an amended complaint, Martcheva appealed the termination to the Montgomery County Court of Common Pleas. The complaint also contained numerous claims: (1) pattern or practice of retaliatory harassment; (2) aiding and abetting discrimination; (3) wrongful discharge in violation of public policy; (4) breach of implied contract; (5) promissory estoppel; (6) fraud and misrepresentation; (7) defamation; (8) tortious interference with a contract, and (9) intentional infliction of emotional distress against numerous BOE-affiliated parties. Martcheva also sought punitive damages, attorney fees, and a writ of mandamus. On November 17, 2020, finding that there was not "substantial and credible evidence to support the board's decision to terminate Martcheva," the trial court ordered the BOE to "immediately reinstate Martcheva to a teaching position comparable to the position [she] had at the time she was terminated. * * *. [T]he Board shall compensate Martcheva for any loss of salary [she] has incurred[.]"

November 17, 2020, Decision and Entry at 33. The court did not determine damages in its judgment entry.

{¶ 17} A damages hearing was held on January 22, 2021, and both sides were permitted to file post-hearing briefs. Shortly thereafter, the parties filed motions for summary judgment, which the trial court decided on April 14, 2021. The trial court granted the BOE summary judgment on Martcheva's claims of pattern or practice of retaliatory harassment; hostile work environment; aiding and abetting discrimination; misrepresentation and fraud; defamation; intentional infliction of emotional distress; and attorney fees relating to certain charges in the amended complaint. The court also granted summary judgment in the BOE's favor on counts relating to punitive damages and various claims against school employees in their individual capacities. Finally, it denied the BOE summary judgment on Martcheva's claim for attorney fees relating to her administrative appeal. Other claims, not at issue in this appeal, were resolved by judgment on the pleadings.

{¶ 18} On April 30, 2021, the trial court entered a final decision as to damages related to Martcheva's termination. The court ordered the BOE to pay Martcheva the following: (1) $22,281.75 for back-pay; (2) $496.80 for health insurance premiums; (3) $1,347.12 for COBRA dental insurance premiums; (4) $3,000 for health spending account contributions; (5) $19,060.12 to the State Teachers Retirement System; (6) any applicable penalties, taxes, and interest. The ordered payments were, in some instances, significantly less than what Martcheva believed she was due.

{¶ 19} Martcheva filed a motion for reconsideration on May 4, 2021. In it, she renewed a previously-filed motion for reconsideration related to decisions awarding the

BOE attorney fees and expenses. Martcheva also requested that the trial court sanction the BOE's attorney. The court denied both requests.

{¶ 20} Martcheva has raised six assignments of error on appeal. We will address them in a manner that facilitates our analysis.

## II.     Failure to conform to Appellate Rules

{¶ 21} In her first and second assignments of error, Martcheva claims that the trial court erred in "not providing [her] with a make-whole remedy for her damages" and "denying [her] motion for attorney fees[.]" Beyond the assignments of error, however, there is a non-compliance with the Ohio Rules of Appellate Procedure.

{¶ 22} According to App.R. 12(A)(2), when a party "fails to identify in the record the error of which the assignment of error is based or fails to argue the assignment separately in the brief," an appeals court may disregard that assignment of error. Further, under App.R. 16(A)(7), an appellant's brief must contain the arguments of the appellant and reasons in support of the contentions, "with citations to the authorities, statutes, and parts of the record on which appellant relies."

{¶ 23} "The burden of affirmatively demonstrating error on appeal rests solely with the appealing party. * * * It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error." *Shumate v. Gahanna*, 10th Dist. Franklin No. 02AP-881, 2003-Ohio-1329, ¶ 6.

## III.     Damages

{¶ 24} In her first assignment of error, Martcheva urges this Court to find that the trial court erred in its damages determination. There are several problems with this argument, however. First, Martcheva makes no argument in her favor. She says the trial

court erred in its determination of damages, but never explains how or why. In lieu of arguments, Martcheva has compiled a chart with three columns: (1) "Martcheva's damages claims"; (2) "The Board's responses"; and (3) "What the trial court awarded." Although debatably educational, providing a chart with what the parties proposed and then the court's outcome is not an argument. Further, Martcheva makes no assertion as to why she is entitled to her desired damages.

{¶ 25} Second, Martcheva has not established the damages amount *with certainty*. A public employee who has been reinstated after a period of wrongful termination may recover compensation for the time she was wrongfully excluded from employment "provided the amount recoverable is established with certainty." *State ex rel. Martin v. Columbus Dept. of Health*, 58 Ohio St.2d 261, 389 N.E.2d 1123 (1979), paragraph one of the syllabus. "With certainty" refers to a "particular amount [that] has been precisely determined as to its value in dollars and cents." *State ex rel. Hamlin v. Collins*, 9 Ohio St.3d 117, 120, 549 N.E.2d 520 (1984). Again, the only proof Martcheva has presented this Court is a chart with her requests, the BOE's response, and the award she received from the trial court. The chart does not rise to the level of *certainty*.

{¶ 26} Finally, even if Martcheva had met the standards of App.R. 12 and 16 or had established the damages with *certainty*, this assignment of error would still fail because we review the trial court's decision for an abuse of discretion. *Jordan v. Ohio Civ. Rights Comm.*, 12th Dist. Fayette No. CA2008-09-034, 2009-Ohio-1208, ¶ 11. To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984). When applying the abuse of discretion standard, an appellate

court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

{¶ 27} In this case, the trial court's decision was reasonable. In fact, the court dedicated over 20 pages in its April 30, 2021 Decision and Entry to its explanation and calculation of the damages. Based on our review of the record, we conclude that the trial court did not abuse its discretion and overrule Martcheva's first assignment of error.

## IV. Bad Faith

{¶ 28} In her second assignment of error, Martcheva argues that the trial court abused its discretion by not granting attorney fees because "the Board acted in bad faith."

{¶ 29} "Ohio follows the 'American Rule,' which 'does not permit the prevailing party to recover attorney fees, in the absence of statutory authorization, as part of the costs of litigation.' " *State ex rel. New Wen, Inc. v. Marchbanks*, 163 Ohio St.3d 14, 2020-Ohio-4865, 167 N.E.3d 934, ¶ 5, quoting *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.*, 46 Ohio St.2d 177, 179, 347 N.E.2d 527 (1976). There is no statutory authorization found in R.C. 3319.16 (the Revised Code section dealing with teacher contract terminations), but there is an exception carved out for bad faith.

{¶ 30} Much like the first assignment of error, Martcheva here makes very little effort to raise an argument as to how the BOE acted in bad faith. She asserts that the statement of facts from one of her trial court briefs (administrative appeal brief) establishes the bad faith, but that is insufficient. "It is well-established that the Rules of Appellate Procedure do not permit parties to incorporate by reference arguments from other sources." (Citations omitted.) *Mancz v. McHenry*, 2d Dist. Greene No. 2019-CA-74, 2021-Ohio-82, ¶ 88. The administrative appeal brief, though, incorporates by reference

allegations from her amended complaint. As the BOE argues, "her allegations of bad faith are self-supporting; she alleged bad faith in her Amended Complaint and is now citing to [it] as proof of that bad faith." Appellee's brief at 6.

{¶ 31} Consequently, Martcheva's second assignment of error is overruled.

## V.     BOE Motion for Summary Judgment

{¶ 32} In her third assignment of error, Martcheva claims that the trial court erred in granting the BOE's motion for summary judgment on her claims for retaliation, hostile work environment reverse race discrimination, fraud and misrepresentation, and intentional infliction of emotional distress.

{¶ 33} Pursuant to Civ.R. 56(C), a movant is entitled to summary judgment when that party demonstrates that there is (1) no issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the non-moving party. *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, 166 N.E.3d 725, ¶ 22 (2d Dist.).

{¶ 34} "The burden of demonstrating that no genuine issues exist as to any material fact falls upon the moving party requesting a summary judgment." *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Once the moving party has satisfied its burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  The nonmoving party cannot rely upon the mere allegations or denials in the pleadings but must provide evidence setting forth specific facts showing that there is a genuine issue of material fact for trial. Civ.R. 56(E). *Accord Geloff v. R.C. Hemm's Glass Shops, Inc.*, 2021-

Ohio-394, 167 N.E.3d 1095, ¶ 14 (2d Dist.). When the standard is met, summary judgment must be awarded as a matter of law.

{¶ 35} We review the trial court's ruling on a summary judgment motion de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42.

Retaliatory Harassment

{¶ 36} In its April 14, 2021 Decision and Entry, the trial court granted the BOE summary judgment on Martcheva's claim for a pattern or practice of retaliatory harassment.

{¶ 37} According to R.C. 4112.02(I), it is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice * * * or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under 4112.01 to 4112.07 of the Revised Code." R.C. 4112.02(I). Retaliation can be established through either direct or circumstantial evidence. *Reid v. Plainsboro Partners, III*, 10th Dist. Franklin Nos. 09AP-442, 09AP-456, 2010-Ohio-4373, ¶ 55.

{¶ 38} If the record establishes direct evidence of retaliation, there is no need to go further in the analysis. Absent direct evidence establishing retaliation, however, "an inference of retaliation may be reached after engaging in the burden shifting framework established in *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)]." *Id*. To establish retaliation, a plaintiff must demonstrate that: (1) he or she engaged in a protected activity; (2) the employer knew that he or she participated in the protected activity; (3) the employer engaged in retaliatory conduct; and (4) a causal

link exists between the protected activity and the adverse action. *Shaw v. Access Ohio*, 2018-Ohio-2969, 118 N.E.3d 351, ¶ 25 (2d Dist.).

{¶ 39} If the plaintiff can establish a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the termination. *Hapner v. Tuesday Morning, Inc.*, 2d Dist. Montgomery No. 19395, 2003-Ohio-781, ¶ 14. The burden is not of persuasion, but of production, and if the employer can articulate some legitimate nondiscriminatory basis for the adverse employment action, then "the burden shifts back to the plaintiff to show, by a preponderance of the evidence, that the proffered reason was really a pretext for unlawful discrimination." *Wholf v. Tremco, Inc.*, 2015-Ohio-171, 26 N.E.3d 902, ¶ 16 (8th Dist.). "'To establish pretext, a plaintiff must demonstrate that the proffered reason (1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Cavins v. S&B Health Care, Inc.*, 2015-Ohio-4119, 39 N.E.3d 1287, ¶ 92 (2d Dist.), quoting *Knepper v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1155, 2011-Ohio-6054, ¶ 12.

{¶ 40} In this case, the trial court found, and we agree, that Martcheva had engaged in a protected activity – she filed two complaints with the Ohio Civil Rights Commission (OCRC). *See Ellis v. Jungle Jim's Market, Inc.*, 2015-Ohio-4226, 44 N.E.3d 1034, ¶ 51 (12th Dist.) (filing a OCRC complaint is a protected activity). The first complaint, a discrimination charge, was filed on November 26, 2018. She then filed an amended complaint on February 5, 2019, alleging that she was retaliated against and faced discrimination because of her race. Martcheva later withdrew the charges before the OCRC submitted any recommendations.

{¶ 41} We also agree with the trial court that even though Martcheva engaged in a protected activity and established a prima facie case, the BOE had a legitimate, nondiscriminatory reason for terminating her contract. Under the second phase of the *McDonnell Douglas* analysis, a defendant meets its burden by putting forth evidence that "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The BOE had several such reasons.

{¶ 42} First, the BOE points to statements made by multiple students which accused Martcheva of making inappropriate comments in the classroom. As noted earlier, the students accused Martcheva of making statements related to bringing a shotgun into the classroom and doing harm to students and herself. Assistant Principal Henson's testimony at the administrative hearing confirmed the students' statements. Further, the BOE's decision to suspend and then terminate Martcheva's contract was based on the students' statements. Finally, it should also be noted that Martcheva conceded that the BOE satisfied its burden. *See Response to Board Motion* at 17 ("After the Board satisfied its burden of production, the burden shifts back to Plaintiff to show that the Board's articulated reason is a pretext for retaliation[.]"). We conclude that the BOE met its burden to show a legitimate, nondiscriminatory reason for termination, and the burden shifted back to Martcheva to demonstrate that the BOE's reason was just pretext for discrimination.

{¶ 43} To establish pretext, a plaintiff must show that the submitted reason (1) has no basis in fact; (2) did not actually motivate the employer's contested conduct; or (3) was insufficient to warrant the contested conduct. *Cavins v. S&B Health Care, Inc.*, 2015-Ohio-

4119, 39 N.E.3d 1287, ¶ 92 (2d Dist.). "Regardless of which option is chosen, the plaintiff must produce sufficient evidence from which the trier of fact could reasonably reject the employer's explanation and infer that the employer intentionally discriminated against him." *Knepper v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1155, 2011-Ohio-6054, ¶ 12. A reason is not proven to be pretext for discrimination unless it is demonstrated that the reason was false, and that discrimination was the real reason. *Id.*

{¶ 44} Martcheva asserts that the reasons given by the BOE have no basis in fact. To support this argument, she posits that the Ohio Department of Education referee found that the BOE did not have good and just cause to terminate her as required by R.C. 3319.16. She further contends that the trial court's finding that there was not "substantial and credible evidence * * * to support the Board's decision to terminate Martcheva" leads to the conclusion that the BOE's reasons for terminating her contract were merely pretextual. We disagree.

{¶ 45} Martcheva believes that the BOE made a mistake when it terminated her contract, but she has not gone the necessary next step to demonstrate that the BOE's reason for firing her was false and was just a *coverup* to terminate her because she filed a complaint with the Ohio Civil Rights Commission. As the trial court found below, Martcheva presented no evidence establishing pretext, a burden she bore. She arguably has presented evidence to demonstrate that she should not have been fired, a position shared by the trial court, but we see no proof that rises to the level of affirmatively proving her contract was terminated for retaliatory reasons.

{¶ 46} We find, as the trial court did, that Martcheva failed to meet her burden on summary judgment as to pretext. The BOE was entitled to summary judgment as to

Martcheva's retaliation claim.

<u>Reverse Race Discrimination and Hostile Work Environment</u>

**{¶ 47}** The trial court also granted the BOE summary judgment as to Martcheva's hostile work environment reverse race discrimination claim, a decision she now appeals.

**{¶ 48}** "An employee pursuing race discrimination claims under R.C. 4112.02 may prevail in one of two ways: by presenting either direct or indirect evidence to prove that [the] employer was motivated by a race-based animus when it took an adverse employment action against [her]. Absent direct evidence of discrimination, an employee must proceed under the burden-shifting, indirect-evidence approach set forth in *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)]." *Grooms v. Supporting Council of Preventative Effort*, 157 Ohio App.3d 55, 2004-Ohio-2034, 809 N.E.2d 42, ¶ 20 (2d Dist.).

**{¶ 49}** In cases alleging reverse race discrimination, a plaintiff must prove (1) background circumstances supporting the inference that the defendant was the unusual employer who discriminated against non-minority employees; (2) the defendant took an action adverse to the plaintiff's employment; (3) the plaintiff was qualified for the position; and (4) the defendant treated the plaintiff disparately from similarly situated minority employees. *Mowery v. Columbus*, 10th Dist. Franklin No. 05AP-266, 2006-Ohio-1153, ¶ 44.

**{¶ 50}** If the employee establishes a prima facie case, the burden of production then shifts to the employer who "must articulate a non-discriminatory reason for taking an adverse employment action against the employee." *Grooms* at ¶ 21, citing *McDonnell Douglas*. If the employer is successful, the burden shifts back to the employee to prove

that the stated non-discriminatory reason for the adverse action was pretextual. *Id.*

{¶ 51} Here, the trial court correctly determined that there was no direct evidence in the record of discrimination. Martcheva argues that her direct evidence came in the form of her testimony that Principal Goins commented that she wanted an all-African American teaching staff at Charity Adams and that Goins criticized Caucasian staff members for allegedly disciplining African American students more harshly than their Caucasian counterparts.

{¶ 52} We cannot find any admissible evidence in the record that Goins ever made the purportedly discriminatory comments. Martcheva was not present when Goins supposedly made the statement about wanting an all-African American staff to another teacher, Michelle Payne-Jones; instead, she learned about it from Vukovic-Burkhardt, who allegedly heard about it from Payne-Jones. That sort of statement, heard third hand, is inadmissible hearsay.

{¶ 53} Martcheva contends that it should be admissible, under the party-opponent hearsay exception (Evid.R. 801(d)(2)), but that argument is unpersuasive. Had Martcheva heard Goins make the purported remarks about wanting an all-African American staff, the statement, while hearsay, would be admissible under Evid.R. 801(d)(2). But Martcheva was told by Vukovic-Burkhardt, who was told by Payne-Jones, who was supposedly told by Goins. It would, conceivably, be possible for Goins's supposed statement to be admissible under Evid.R. 805 (hearsay within hearsay), but each link in the chain between Goins and Martcheva would have to conform to the rule and fit under a hearsay exception. We do not have that here. Further, other courts have been reluctant to allow hearsay within hearsay in the discrimination context because the statements are oftentimes

unreliable. *Shorter v. Memphis Light, Gas & Water Co.*, 252 F.Supp.2d 611 (W.D. Tenn. 2003) (co-worker's assertion that he heard another co-worker state that he heard a racist remark cannot be used because it constitutes double hearsay).

{¶ 54} Martcheva also asserts that there was direct evidence of reverse race discrimination in the form of the testimony of Tamara Milner, an African American teacher at the school. This alleged testimony is not in the record, however, and cannot be considered. Because there is no direct evidence, we must use the burden-shifting analysis of *McDonnell Douglas*.

{¶ 55} To be successful on a reverse racial discrimination claim, Martcheva must prove (1) background circumstances supporting the inference that the defendant was the unusual employer who discriminated against non-minority employees; (2) that the defendant took an action adverse to the plaintiff's employment; (3) that the plaintiff was qualified for the position; and (4) the defendant treated the plaintiff disparately from similarly situated minority employees. *Mowery,* 10th Dist. Franklin No. 05AP-266, 2006-Ohio-1153. She fails to advance any argument relating to these factors in her brief, and there is nothing in the record that would lead us to conclude that Martcheva could meet any of these factors.

{¶ 56} While Martcheva has captioned this assignment of error as "Martcheva's claim for hostile work environment reverse race Discrimination," there is no mention of, let alone argument for, a hostile work environment claim. Therefore, we find that Martcheva failed to meet her burden on summary judgment. The BOE was entitled to summary judgment as to Martcheva's reverse racial discrimination claim and, to the extent it was raised, her hostile work environment claim.

Fraud and Misrepresentation

**{¶ 57}** Like the claims of retaliation and hostile work environment reverse race discrimination before it, the trial court granted the BOE summary judgment on Martcheva's fraud and misrepresentation claims.

**{¶ 58}** A claim of fraud has the following elements: (1) a representation (or concealment of fact when there is a duty to disclose); (2) that is material to the transaction; (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false; (4) with intent to mislead another into relying upon it; (5) justifiable reliance; and (6) resulting injury proximately caused by the reliance. *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 27.

**{¶ 59}** The Ohio Rules of Civil Procedure generally only require "notice pleading," but under Civ.R. 9(B), allegations of fraud must be pled with specificity. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Civ.R. 9(B). Therefore, to properly plead a fraud claim, the plaintiff must: (1) specify the statement(s) claimed to be false; (2) state in the complaint the time and place where the statement(s) were made; and (3) identify the defendant claimed to have made the statement(s). *Schroeder* at ¶ 19, citing *Korodi v. Minot*, 40 Ohio App.3d 1, 4, 531 N.E.2d 318 (10th Dist.1987).

**{¶ 60}** As the BOE argues, Martcheva's fraud claim fails because it lacks particularity. In Martcheva's amended complaint, she alleged that "[i]n its Nondiscrimination and Nondiscrimination/Harassment policies, the Board made

representations to all of its employees, including Plaintiff, that the Board would protect them against discrimination, harassment, and retaliation." Amended Complaint at ¶ 108. She does not, however, identify the portions of the BOE policy that she believes are untrue. Because this first prong is dispositive, there is no need to analyze the rest. Martcheva's fraud claim fails because it lacked the particularity required by Civ.R. 9(B). Even if we did consider it, her discrimination, harassment, and retaliation claims were dismissed on other grounds, thus precluding a fraud claim. We turn to her intentional misrepresentation claim.

{¶ 61} "The elements of a cause of action for intentional misrepresentation are as follows: (a) a representation or, where there is a duty to disclose, concealment of a fact; (b) which is material to the transaction at hand; (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (d) with the intent of misleading another into relying upon it; (e) justifiable reliance upon the representation or concealment; and (f) a resulting injury proximately caused by the reliance." *Burns-Boggs v. Howerton*, 2d Dist. Montgomery No. 21384, 2006-Ohio-4002, ¶ 23.

{¶ 62} In her brief, Martcheva fails to make an argument about intentional misrepresentation. After citing a partial statement of law which mentions only one of the six elements of the tort, Martcheva, inexplicably, spends the next page and half arguing for a "cat's paw" theory of liability in a retaliation claim. No argument for intentional misrepresentation can be found in the amended complaint or summary judgment brief either. We must conclude, hence, that Martcheva has not properly pled or demonstrated the claim.

{¶ 63} We find that summary judgment was proper as to Martcheva's claims of fraud and misrepresentation.

<u>Intentional Infliction of Emotional Distress</u>

{¶ 64} Finally, Martcheva challenges the trial court's granting of summary judgment to the BOE on her claim for intentional infliction of emotional distress.

{¶ 65} A claim for intentional infliction of emotional distress requires proof of the following elements: (1) that the actor either intended to cause emotional distress to the plaintiff, or knew or should have known that the actions would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all bounds of decency and was such that it can be considered utterly intolerable in a civilized society, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is so serious that no reasonable person could be expected to endure it. *Chaney v. Potsdam*, 2d Dist. Miami No. 2004-CA-19, 2005-Ohio-603, ¶ 98.

{¶ 66} Only the most extreme wrongs, which do great harm to the norms of a civilized society, will rise to the level of extreme and outrageous conduct. *Brown v. Denny*, 72 Ohio App.3d 417, 423, 594 N.E.2d 1009 (2d Dist.1997). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outragous!' " *Id.* quoting 1 Restatement of the Law 2d, Torts, Section 46, Comment d (1965).

{¶ 67} In this case, the trial court found that there was no genuine issue of material fact as to the second element of Martcheva's intentional infliction of emotional distress claim – there was no "extreme" or "outrageous" conduct on the part of the BOE. We agree.

The BOE presented evidence that Martcheva was fired after receiving what it considered credible evidence that she engaged in very detrimental classroom conduct: multiple students accused her of making threatening statements against students and herself. Martcheva responded with a list of actions taken by the school district that she claims were relevant to the second element of her claim. The problem with her evidence is that none of it even comes close to approaching the level of "extreme" or "outrageous" conduct. They were simply actions taken by the district with which she disagreed.

{¶ 68} She also did not meet the fourth element – that the mental anguish suffered by the plaintiff was so serious that no reasonable person could be expected to endure it. "Serious emotional distress describes emotional injury which is both severe and debilitating." *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983), paragraph three of the syllabus. The *Paugh* Court went on to hold that "serious emotional distress may be found where a reasonable person * * * would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* at 78. Examples of serious emotional distress include psychosis, neurosis, phobia, or chronic depression. *Id.*

{¶ 69} The physical and mental effects Martcheva described in her deposition (which was the only place she addressed the matter outside the amended complaint) included anxiety, depression, panic attacks, loss of self-esteem, self-doubt, sleepiness, and irritability. While we do not wish to diminish what she says she has gone through, those effects do not rise to the level of being so extreme that no reasonable person could endure them. She, in fact, did endure them, and has continued to work and raise her family. Neither has she presented evidence that she has sought professional help, a fact some courts have held to be necessary in a successful claim. *See Day v. Stanley Elec.*

*U.S. Co., Inc.*, 12th Dist. Madison No. CA95-08-029, 1996 WL 12879 (Jan. 16, 1996) (summary judgment was proper where appellant submitted no medical testimony or evidence of treatment for serious emotional distress); *Hartwig v. National Broadcasting Co.*, 863 F.Supp. 558 (N.D.Ohio 1994).

{¶ 70} We find that there was no genuine issue of material fact as to the second and fourth elements of Martcheva's claim, and the trial court properly granted judgment to the BOE as a matter of law.

{¶ 71} Martcheva's third assignment of error is overruled.

### VI. Claims Against District Employees

{¶ 72} In addition to bringing claims against the BOE, Martcheva also sued individuals employed by Dayton Public Schools. In her fourth assignment of error, Martcheva argues that the trial court erred in granting the employees' motion for summary judgment on her claims of aiding and abetting discrimination, defamation, punitive damages, and attorney fees.

<u>Aiding and Abetting Discrimination</u>

{¶ 73} The first part of the summary judgment challenged by Martcheva is her claim of aiding and abetting discrimination under R.C. 4112.02(J). She makes no argument in her brief for this claim except that "the district court's analysis is flawed because as discussed *supra* at ? [sic], the Board is not entitled to summary judgment on Martcheva's pattern-or-practice of retaliatory harassment claim." Appellant's brief at 18. Even if an argument was made, Martcheva cannot establish that the court's ruling was improper.

{¶ 74} R.C. 4112.02(J) states that no person shall "aid, abet, incite, compel, or

coerce the doing of any act declared * * * to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter * * *, or to attempt directly or indirectly to commit any act declared * * * to be an unlawful discriminatory practice." Courts have held that to aid and abet, a person must "actively participate in, or otherwise facilitate, another's discriminatory act in violation of R.C. 4112.02." *Johnson-Newberry v. Cuyahoga Cty.*, 2019-Ohio-3655, 144 N.E.3d 1058, ¶ 21 (8th Dist.).

{¶ 75} When a court finds that a defendant is entitled to summary judgment on the underlying discrimination and retaliation claims, "the court must also necessarily grant summary judgment on the claim of aiding and abetting those claims." *Weinrauch v. Sherwin-Williams Co.*, N.D.Ohio No. 1:18-cv-01696, 2019 WL 3007031, *14 (July 10, 2019).

{¶ 76} We have previously concluded that the BOE was entitled to summary judgment on Martcheva's underlying discrimination and retaliation claims; consequently, her aiding and abetting claim fails as a matter of law. The trial court properly determined that the defendants were entitled to summary judgment.

Defamation

{¶ 77} The trial court granted the individual defendants summary judgment as to Martcheva's defamation claim, finding that the defendants were entitled to immunity. Martcheva now challenges that ruling.

{¶ 78} "To prevail on a claim of defamation, the evidence must establish (1) a false and defamatory statement concerning the plaintiff; (2) publication of the statement; (3) fault; and (4) harm." *Wilson v. Wilson*, 2d Dist. Montgomery No. 21443, 2007-Ohio-178, ¶ 12. Defamation can take the form of libel or slander. Libel refers to written or printed

defamatory words and slander generally refers to spoken defamatory words. *Matikas v. Univ. of Dayton*, 152 Ohio App.3d 514, 2003-Ohio-1852, 788 N.E.2d 1108, ¶ 27 (2d Dist.).

{¶ 79} As to immunity, R.C. 2744.03(A)(6) states that in a civil action brought against a political subdivision or an employee thereof to recover damages for injury, the employee is immune from liability unless (1) his or her acts or omissions were manifestly outside the scope of her employment; or (2) his or her acts or omissions were with malicious purpose, bad faith, or in a wanton or reckless manner.

{¶ 80} The statute does not define what conduct is "manifestly outside the scope of employment," but Ohio courts have often held that "conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business." *Jackson v. McDonald*, 144 Ohio App.3d 301, 307, 760 N.E.2d 24 (5th Dist.2001). *Accord Coterel v. Reed*, 2016-Ohio-7411, 72 N.E.3d 1159, ¶ 17 (2d Dist.); *Curry v. Blanchester*, 12th Dist. Clinton Nos. CA2009-08-010, CA2009-08-012, 2010-Ohio-3368, ¶ 30. "For an act to fall within the scope of employment, it must be calculated to facilitate or promote the business for which the [employee or agent] was employed." (Citations omitted.) *Johnson v. Godsey*, 2d Dist. Clark No. 2012-CA-80, 2013-Ohio-3277, ¶ 32.

{¶ 81} "For the purposes of R.C. 2744.03, 'malice' refers to 'the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified.' " *Reno v. Centerville*, 2d Dist. Montgomery No. 20078, 2004-Ohio-781, ¶ 25, quoting *Moffitt v. Litteral*, 2d Dist. Montgomery No. 19154, 2002-Ohio-4973, ¶ 96. "Bad faith" has been defined as a "sinister motive that has no reasonable justification" and "wanton" conduct implies a failure to exercise any care. *Moffitt* at ¶ 96. "Reckless" conduct is "conduct that causes an unreasonable risk of harm." *Id.*

**{¶ 82}** We find no evidence in the record to demonstrate that the employee-defendants acted "manifestly outside the scope of employment." In fact, we believe that the actions taken and decisions made by the principals and HR directors were squarely within the scope of their employment responsibilities. Accordingly, to be successful, Martcheva must prove that they acted with "malicious purpose, bad faith, or in a wanton or reckless manner."

**{¶ 83}** Martcheva argues that the defendants acted with "malicious purpose, bad faith, or in a wanton or reckless manner," and that this is confirmed by the referee's finding that "[n]either of the building administrators – Ms. Goins and Ms. Henson – and no one from the District offices of Human Resources [Spurlock] or Safety and Security [Hines] ever interviewed Ms. Martcheva with respect to the allegations against her." Appellant's brief at 20, citing Referee's Decision at 11. Accepting as true that Martcheva was never interviewed during the district's investigation, that would certainly not rise to the level of being malicious, done in bad faith, or wantonness, but we conclude that the failure to interview Martcheva did not even reach recklessness as reckless conduct is substantially worse than negligent conduct. *Coterel* at ¶ 16.

**{¶ 84}** While the investigation into Martcheva's conduct may not have been as thorough as she would have liked, it was at the very least competent. After learning of the allegations over the phone from Clark, Principal Goins brought Clark and Student One into the office to speak about the allegations in person. From there, she notified HR and was told to collect statements from any student that may have overheard Martcheva's purported declarations. Assistant Principal Henson then asked the students, one at a time, open ended questions, and two other students confirmed that Martcheva had made

threats against students. After speaking with them, Henson directed Student Two and Student Three to go to the school resource officer to write down statements. After reading the girls' statements and checking on their credibility (the girls' disciplinary records were checked to determine if they had an "ax to grind" against Martcheva), Goins once again contacted HR and explained that there were three students with corroborating accounts and then turned the statements over to her superiors. The district then conducted a pre-disciplinary hearing.

{¶ 85} While one could think of ways the investigation could have been more thorough, it was, *at most,* negligent. We conclude that because the defendants' conduct was neither manifestly outside the scope of their employment, nor done with malicious purpose, bad faith, or in a wanton or reckless manner, they were entitled to immunity under R.C. 2744.03(A)(6) against Martcheva's defamation claim. Thus, there was no genuine issue of material fact, and summary judgment was properly awarded to the defendants.

Punitive Damages and Attorney Fees

{¶ 86} The trial court also granted the defendants summary judgment for Martcheva's claims regarding punitive damages and attorney fees.

{¶ 87} A claim for punitive damages is a derivative claim and its survival relies on the survival of at least one of the primary claims. *Vickers v. Wren Industries*, 2d Dist. Montgomery No. 20914, 2005-Ohio-3656, ¶ 65. *See also Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 515 (6th Cir.2003) (a claim for punitive damages is derivative in nature and "may not provide greater relief than that available under the primary cause of action."); *Stolz v. J&B Steel Erectors, Inc.*, 76 F.Supp.2d 696, 703 (S.D. Ohio 2014) (an Ohio

punitive damages claim is a derivative action that must be dismissed if the primary claim does not survive). Here, because all the underlying claims have failed, Martcheva's claim for punitive damages must fail as a matter of law.

{¶ 88} Martcheva's claim to attorney fees fares no better. Ohio law precludes attorney fees by the prevailing party unless they are authorized by statute. *State ex rel. New Wen, Inc. v. Marchbanks*, 163 Ohio St.3d 14, 2020-Ohio-4865, 167 N.E.3d 934, ¶ 5. R.C. 4112.02(J) does not authorize attorney fees, and further, she was not the prevailing party. Therefore, Martcheva could not recover attorney fees.

{¶ 89} The fourth assignment of error is overruled.

## VII. Martcheva's Motion for Summary Judgment

{¶ 90} In her fifth assignment of error, Martcheva states that the trial court erred in overruling her motion for summary judgment against the school district defendants. While she makes that statement in her section heading, there is no actual argument to that effect in the subsequent pages. There are arguments made that summary judgment should not have been granted to the school district defendants, but we find no arguments in support of her claim that summary judgment should have been granted against the defendants. Even if those arguments had been made, we already concluded that summary judgment was properly granted to the employees, which necessarily means it could not be granted to Martcheva. Her fifth assignment of error is overruled.

## VIII. Attorney Fees

{¶ 91} In her sixth and final assignment of error, Martcheva asserts that the trial court erred in granting the BOE's motion for attorney fees against her attorney.

{¶ 92} On September 25, 2020, the BOE filed a motion to limit discovery and for a

protective order after Martcheva filed a motion to compel the BOE to turn over the addresses of Students One, Two, Three, and Tamara Milner.

**{¶ 93}** Civ.R. 37(A) gives a party the ability to move for an order compelling discovery if the movant has in good faith attempted to obtain the discovery in the normal course of action. Civ.R. 37(A)(1). If the motion is granted, the trial court shall require (with a few exceptions) the party whose conduct necessitated the motion, or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney fees. Civ.R. 37(A)(5)(a). On the other hand, if the motion is denied, the court may issue a protective order authorized under Civ.R. 26(C) and shall require the movant, the attorney filing the motion, or both, to pay the reasonable attorney fees and expenses incurred in opposing the motion unless the motion was substantially justified. Civ.R. 37(A)(5)(b).

**{¶ 94}** In this case, the trial court found Martcheva's request to obtain the witnesses' addresses to be not substantially justified because she "moved to compel an order for the production of witness addresses before so much as making a discovery request pursuant to the Rules of Civil Procedure." October 15, 2020 Decision and Entry at 15. After providing Martcheva the chance to be heard on the matter, the court ordered that her *attorney* pay the BOE $470 (the BOE initially requested $1,727) in attorney fees for having to respond to the motion. The issue for us to decide now is whether the trial court abused its discretion when it ordered the attorney fees. *Bobb Chevrolet, Inc. v. Dobbins*, 4th Dist. Ross No. 01CA2621, 2002-Ohio-4256, ¶ 30.

**{¶ 95}** To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo,* 12 Ohio St.3d 230, 232, 466 N.E.2d 875. When

applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons,* 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

**{¶ 96}** In this case, the trial court gave a detailed explanation as to why it found Martcheva's motion to be not substantially justified and how and why it came up with the award amount. *See* May 10, 2021 Decision and Entry at 4-18. We find the court's decision to be reasonable. The sixth assignment of error, therefore, is overruled.

### IX. Conclusion

**{¶ 97}** The trial court's judgments will be affirmed.

. . . . . . . . . . . . .


TUCKER, P. J. and HALL, J., concur.


Copies sent to:

Peter K. Newman
David J. Lampe
Jason R. Stuckey
Aaron Rothey
Hon. Mary E. Montgomery